IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH DEYO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 06-3712 |
| ST. LUKE'S HOSPITAL and HEALTH NETWORK | : | |
| | : | |

**MEMORANDUM**

Ludwig, J.                                                                                                     September 24, 2008

This is an action under the Age Discrimination in Employment Act, 29 U.S.C.A. § 621 et seq., and the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421 et seq., in which defendant St. Luke's Hospital and Health Network moves for summary judgment, Fed. R. Civ. P. 56.[1]  The motion will be granted.

Plaintiff Ralph Deyo worked as a maintenance worker at St. Luke's Hospital until his employment was terminated on November 15, 2002.  The complaint alleges that the basis given for his termination - tape-recording a meeting with his direct supervisors without permission - was pretextual.  On the contrary, he maintains, his termination was age-related (he was 61), and in violation of the ADEA.  His second claim is under the Pennsylvania Whistleblower Act, asserting that he was fired in retaliation for reporting to defendant's Human Relations Department that his direct supervisor was operating a

---

[1] Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that the moving party "is entitled to judgment as a matter of law."  It is necessary to "view the facts in the light most favorable to the non-moving party" and to "draw all inferences" in that party's favor.  Disabled in Action of Pennsylvania v. SEPTA, – F.3d –, –, 2008 WL 3842937, at *6 (3d Cir., filed Aug. 19, 2008) (citations omitted).

janitorial service in competition with defendant's own maintenance department.

    The undisputed facts are as follows.[2]  Beginning in November 1994, plaintiff worked for defendant as a cleaning aide in the environmental services department.  His supervisor was Jeff Smith.  Deposition testimony, plaintiff Ralph Deyo, at 26, 29.  His employment history evidences several incidents of untoward behavior.[3]  In October 2003, plaintiff admittedly threatened a supervisor who told plaintiff not to lock off both elevators at the same time.[4]  Deyo N.T. 39-43.  In November 2003, he threatened Smith, who had by then been promoted to Director of Environmental Services.[5]  In April 2005, plaintiff admittedly yelled at and intimidated another co-worker, Madeline Young.  Deyo

---

[2] The summary judgment record consists of deposition testimony, answers to interrogatories and requests for admissions, documents produced by both parties, affidavits and the pleadings.

[3] In addition to the specific incidents recounted, plaintiff was advised more than once to obtain permission before working overtime hours.  Affidavit of Jeff Smith.  Additionally, on at least six occasions, plaintiff requested transfers to other departments.  Deyo N.T. 33-37, 55.

[4] Regarding the incident, plaintiff stated at deposition: "[t]he next day I was talking to John Watson, and I told him that's the first time in a long time I've been that angry, and I was so mad that if - I had a nightstick or even a piece of rebar or anything, he would have - he would have probably gotten it."  Deyo N.T. 41.

[5] Specifically, plaintiff told Smith that he "was going down for a conflict of interest."  Deyo N.T. 45.  Plaintiff was referring to an alleged conflict of interest arising from Smith's operation of a cleaning business that services doctor's offices in the Medical Office Building, a building near the hospital, but not owned by it.  Plaintiff believed that Smith was stealing hospital supplies for his own business.  Id. at 48-50, 137.  However, plaintiff admitted at deposition that he had no evidence of stealing by Smith.  Id. at 137.  Additionally, he admitted that he had been aware of Smith's business for almost ten years before raising the conflict issue in 2003.  Id. at 31-32.  He did not speak to anyone at the hospital about the alleged conflict until November 5, 2005 - "the Wednesday before I was fired," according to plaintiff.  Id. at 52.  The alleged conflict of interest on Smith's part, and plaintiff's reporting of it, forms the basis for plaintiff's Whistleblower claim.  Response to Request for Admissions, ¶ 28.

N.T. 55-56. On May 10, 2005, during a meeting with co-workers and his supervisors, plaintiff admittedly again yelled at his co-workers because he believed they were leaving early without permission. Deyo N.T. 60-62. After the meeting, he was told to take the rest of the day off but refused, stating that his anger was an effort to "scare the ladies straight." Smith affidavit.

After this incident, plaintiff was placed on second-step corrective action and transferred to an area of the hospital where he could work alone. Corrective Action Report; Deyo N.T. 65. At deposition, plaintiff stated that he was replaced by Wilson Solivan, a younger worker. Deyo N.T. 130-31.[6]

In November 2005, plaintiff observed an individual he assumed to be in Smith's employ cleaning an office suite near the one where plaintiff was working. Plaintiff assumed that Smith had assigned plaintiff to clean suites for which Smith's company was responsible, though plaintiff was employed by St. Luke's and not Smith. Deyo N.T. 77-78, 83. Plaintiff contacted St. Luke's legal department about the situation and was told that Smith had a contract with the hospital. Deyo N.T. 80. Two days later, plaintiff called his supervisor a "bastard" in the course of a conversation regarding holiday scheduling. Deyo N.T. 88-92. The next day, at a meeting with Smith and plaintiff's direct supervisor, plaintiff attempted to tape the conversation. Smith turned the tape recorder off and told plaintiff he was not permitted to do so. Plaintiff refused to conduct the conversation

---

[6] The amended complaint alleges that the replacement took place after plaintiff's November 2005 termination. Solivan's age is not in the record.

without recording it, and raised his voice to Smith. As a result of his disobeying the instructions of a superior, plaintiff was suspended. Deyo N.T. 97-98, 104. By letter dated November 15, 2005, plaintiff's employment was terminated for unacceptable behavior and non-conformity with hospital policy.[7]

Following his termination, plaintiff applied for unemployment benefits, which were denied because of plaintiff's insubordination in refusing to turn off the tape recorder. Unemployment Compensation Board of Review decision, Exhibit "B" to defendant's motion. Plaintiff unsuccessfully appealed the decision. Exhibit "L" to defendant's motion. The unemployment record, including the referee's decision, explicitly states that plaintiff engaged in disqualifying insubordinate conduct, and that he "was not discharged in retaliation for any 'whistle blower' behavior." Exhibit "B," ¶ 24.[8] Plaintiff admits he did not mention age discrimination in the context of the unemployment benefits process. Deyo N.T. 114.[9]

Under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), ADEA plaintiffs must establish a prima facie case of

---

[7] The letter, attached to defendant's motion as Exhibit "K", refers to these incidents, and notes that plaintiff had been warned on prior occasions that more incidents cold result in further corrective action, including termination. Id.

[8] The decision is admissible and can be probative of an issue. Helfrich v. Lehigh Valley Hosp., 2005 WL 1715689, at *20 (E.D. Pa., filed July 21, 2005).

[9] Plaintiff did file a claim with the Equal Employment Opportunity Commission alleging age discrimination. Charge of Discrimination, Exhibit "M" to defendant's motion. The EEOC claim does not include a whistle blower claim. Id.; Deyo N.T. 117-18.

discrimination. For purposes of summary judgment, the prima facie case will be presumed, and the burden shifts to defendant to produce evidence of a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment. See Simpson v. Kay Jewelers, 142 F.3d 639, 643-44 & n.5 (3d Cir. 1996). This burden, however, is not great. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Here, it is undisputed that plaintiff's termination was the result of his insubordination in insisting on taping the November meeting with his supervisors despite their direction not to do so. This incident was the last of many evincing plaintiff's lack of respect for his supervisors and their position. This meets defendant's responsive burden.

At this point, it becomes plaintiff's burden to prove that the reasons advanced for the termination are, as he asserts, pretextual. Simpson, 142 F.3d at 644 & n.5. To satisfy this burden, plaintiff must produce "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Kelly v. Drexel Univ., 907 F. Supp. 864, 876 (E.D. Pa., 1995), aff'd, 94 F.3d 102 (3d Cir. 1996), citing Fuentes, 32 F.3d at 764; see also Simpson, 142 F.3d at 644-45. It is not sufficient that the employer's decision was mistaken or otherwise nondiscriminatory. Fuentes, 32 F.3d at 765. Plaintiff's evidence must show that the decision involved discriminatory factors. Simpson, 142 F.3d at 644-45.

Here, plaintiff offers no evidence whatsoever that the decision to fire him was the result of anything other than his insubordinate conduct, culminating in the tape-recording incident. Indeed, plaintiff has admitted that, other than the fact that he was sixty-one years old at the time he was fired, he has no evidence of age discrimination. Deyo N.T.131-32. He has also stated that the reasons set forth by defendant for his termination are a pretext not for age discrimination, but for whistleblower activity. Deyo N.T. 121. On this record, there is no direct evidence, and there can be no inference, that plaintiff's termination was the result of age discrimination, and summary judgment must be granted in defendant's favor on Count I of the Amended Complaint (ADEA Discrimination).

With respect to the Pennsylvania Whistleblower Act, 43 P.S. § 1423(b), in order to show a retaliatory discharge, plaintiff must prove that "prior to his or her discharge, the employee reported or was about to report an instance of waste to the employer or an appropriate authority and was discharged in reprisal." Lutz v. Springettsbury Twp., 667 A.2d 251, 253 (Pa. Cmwlth. 1995). The Act is applicable to public employers. Halstead v. Motorcycle Safety Foundation, 71 F.Supp.2d 464, 471 (E.D. Pa. 1999).[10]

According to defendant, plaintiff cannot establish having made a good faith report of wrongdoing or waste. A good faith report is a "report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit."

---

[10] Defendant maintains that it is not a "public employer" as that term is defined under the Act. Because plaintiff does not satisfy the remaining elements of the claim, it is not necessary to consider this issue.

Cipriani v. Lycoming Cty. Housing Auth., 177 F.Supp.2d 303, 330 (M.D. Pa. 2001) (dismissing Whistleblower claim where there was pre-existing animosity between plaintiff and subject of report). Here, the evidence of record - including the termination letter issued by defendant, the UCBR decision, and plaintiff's own testimony - demonstrates that there was a pre-existing animosity between plaintiff and Smith. It suggests that plaintiff reported Smith for personal reasons of ill will, rather than to protect the hospital. Additionally, plaintiff stated at deposition that he was aware of Smith's supposed wrongdoing for years before bringing it to the attention of the hospital - just prior to his termination - and on more than one occasion had threatened to disclose the conflict of interest. This raises the good faith nature of plaintiff's eventual report, and plaintiff supplies no evidence to the contrary.

Defendant also argues that there is no evidence of wrongdoing, as that term is defined in 43 P.S. § 1422 - "a violation which is not merely of a technical or minimal nature of a Federal or State statute or regulation." Here, plaintiff does not point to a statute or regulation violated by Smith's operation of a competing business. Moreover, plaintiff in his deposition states that he had no evidence that Smith was engaged in wrongdoing. It is undisputed that Smith had the hospital's approval to operate his cleaning business. Smith Affidavit.

Plaintiff refers to no evidence of a causal connection between his reporting Smith's conduct and his own termination. The mere fact he made a report and was subsequently

terminated is insufficient. Lutz, 667 A.2d at 253. Plaintiff must "show by concrete facts or surrounding circumstances that the report led to their dismissal." Gray v. Hafer, 651 A.2d 221, 225 (Pa. Cmwlth. 1995). Here, plaintiff has not done so.

Because the evidence of record does not satisfy any of the elements of a Whistleblower Act claim, summary judgment must be entered in favor of defendant on Count II of the Amended Complaint.

                                                    BY THE COURT:

                                                    /s/ Edmund V. Ludwig
                                                    Edmund V. Ludwig, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH DEYO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 06-3712 |
| ST. LUKE'S HOSPITAL and HEALTH NETWORK | : : | |

## **ORDER**

AND NOW, this 24th day of September, 2008, the "Motion for Summary Judgment of Defendant, St. Luke's Hospital" (docket no.14) is granted. Summary judgment is entered in favor of defendant and against plaintiff. A memorandum accompanies this order.

BY THE COURT:

 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

9